**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Spectrum Pacific West LLC, | No. CV-20-01204-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| City of Yuma, | |
| Defendant. | |

**INTRODUCTION**

In 1984, Congress passed the Cable Communications Policy Act (the "Cable Act"). Among other things, the Cable Act "establish[ed] franchise procedures and standards which encourage the growth and development of cable systems and which assure that cable systems are responsive to the needs and interests of the local community." 47 U.S.C. § 521(2). Cable systems are generally facilities "designed to provide cable service which includes video programming." *Id.* § 522(7). Under the Cable Act, a franchising authority may grant a franchise to a cable operator. *Id.* § 541(a)(1). A franchising authority is a "governmental entity empowered by Federal, State, or local law to grant a franchise," and a franchise constitutes authorization by the franchising authority to construct or operate a cable system. *Id.* § 522(9)-(10). A franchise permits the cable operator to construct the cable system "over public rights-of-way, and through easements." *Id.* § 541(a)(2). A cable operator may not operate a cable system without a franchise. *Id.* § 541(b)(1).

In 2018, Arizona passed a statewide uniform video franchising law. A.R.S. § 9-

1401 *et seq.* Under this new law, "the licensing of video service providers and the regulation and use of video service are not subject to further regulation by a local government." *Id.* § 9-1402(A). The state expressly "occupie[d] the entire field of licensing and regulation of video service" and, in certain circumstances, preempted local law or franchise agreements with a local government. *Id.* § 9-1402(B)-(C). The new law required local governments to "adopt a standard form of uniform video service license agreement for video service providers to be used by the local government" on or before July 1, 2019. *Id.* § 9-1411(B). Between December 31, 2019 and July 1, 2020, a cable operator with an existing franchise issued by a local government entity could choose to continue operating under the existing franchise or terminate the franchise in favor of a uniform video service license. *Id.* § 9-1412(A)-(B).

On June 17, 2020, Plaintiff Spectrum Pacific West LLC ("Charter") sued the City of Yuma (the "City"), asserting claims related to the City's alleged non-compliance with Arizona's uniform video franchising law. (Doc. 1.) Now pending before the Court is the City's motion to dismiss for failure to state a claim. (Doc. 12.) Charter filed a response (Doc. 13) and the City filed a reply (Doc. 16). For the reasons explained below, the motion will be denied.[1]

## BACKGROUND

The following allegations, which are assumed to be true for purposes of the City's motion unless contradicted by matters properly subject to judicial notice, are derived from Charter's complaint. (Doc. 1.)

Charter is a cable operator that "provides cable and other advanced communication services—such as broadband internet access and digital voice—to residential and business subscribers in the City." (*Id.* ¶ 2.) Charter is a party to four "interrelated agreements with the City," which are all "collectively part of the franchise agreement" (the "Agreements"). (*Id.* ¶ 16.)

---

[1] The parties requested oral argument but this request will be denied because the issues are fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b) (courts may decide motions without oral hearings); LRCiv 7.2(f) (same).

On December 16, 2019, Charter notified the City that it "intended to terminate its local cable franchise in favor of a uniform video service license effective December 31, 2019." (*Id.* ¶ 79.) On December 17, 2019, the City responded and "denied any obligation to comply with the Uniform Franchise Law and refused to provide Charter with the standard form of application and affidavit necessary for Charter to apply for a uniform video service license." (*Id.* ¶ 81.) The City "purported to require and still requires Charter to continue to comply with all of the obligations under" the Agreements. (*Id.* ¶ 82.)

**DISCUSSION**

Charter has asserted three claims against the City. Count One is a state-law claim for violation of Arizona's uniform video franchising law. (*Id.* ¶¶ 90-106.) Count Two is a federal claim, the precise contours of which are disputed (as discussed in more detail below). (*Id.* ¶¶ 107-09.) Count Three is a request for a declaratory judgment that the City has violated Arizona law, that the Agreements are terminated, and that the obligations imposed under the Agreements are preempted by state law. (*Id.* ¶¶ 110-17.) Charter also requests an injunction to require the City to "adopt the standard form of application, affidavit, and uniform video service license agreement compliant with Arizona law" and to prevent the City from enforcing the Agreements. (*Id.* at 18.) The City moves to dismiss all claims. (Doc. 12.)

I.      Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1144-45 (internal quotation marks omitted). However, the court need not accept legal conclusions couched as factual

allegations. *Iqbal*, 556 U.S. at 679-80. The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (internal quotation marks omitted).

II. Count One

The City argues that Charter's state-law claim should be dismissed because Charter did not provide a notice of claim as required by A.R.S. § 12-821.01. (Doc. 12 at 5-10.) Charter acknowledges it did not provide a notice of claim but argues that, because it is only requesting declaratory and injunctive relief, it was not required to do so. (Doc. 13 at 6-9.)

Under Arizona law, a party seeking to bring a claim against a public entity must file a "notice of claim" with that entity within 180 days of the action accruing. A.R.S. § 12-821.01(A). "The claim shall . . . contain a specific amount for which the claim can be settled and the facts supporting that amount." *Id.* "If a notice of claim is not properly filed within the statutory time limit, a plaintiff's claim is barred by statute." *Falcon ex rel. Sandoval v. Maricopa County*, 144 P.3d 1254, 1256 (Ariz. 2006). "Actual notice and substantial compliance do not excuse failure to comply with the statutory requirements." *Id.*

It is well established that Arizona's notice of claim statute generally does not apply to claims for declaratory or injunctive relief. *Home Builders Ass'n of Cent. Ariz. v. Kard*, 199 P.3d 629, 636 (Ariz. Ct. App. 2008) ("The notice of claim statute applies to a request for damages, rather than to a request for declaratory or injunctive relief."); *State v. Mabery Ranch, Co., L.L.C.*, 165 P.3d 211, 223 (Ariz. Ct. App. 2007) ("[T]he drafters intended the statute to apply to claims for money damages . . . [and] not to apply to claims that seek only to restrain government conduct."); *Martineau v. Maricopa County*, 86 P.3d 912, 917 (Ariz. Ct. App. 2004) ("[I]n view of the nature of the action—that is, a declaratory judgment action seeking to invalidate the County's policy—Appellants were not required to comply with Arizona's public entity and county claim notice statutes."). The City argues that Charter's claims nevertheless trigger A.R.S. § 12-821.01(A) because Charter is effectively seeking something of value: "the recovery of valuable property interests"

through the repudiation of "four separate and bargained for contracts." (Doc. 12 at 8.) The City further argues that a judgment in Charter's favor would implicate public funds because the "impact on the City should [its] bargained and paid for consideration be altered would be significant." (*Id.*) The City contends that Charter's request for relief is the equivalent of a damages claim, noting that Charter indicated in its complaint that "the value of the interests at stake exceeds $75,000." (*Id.*)

The City cites *Arpaio v. Maricopa County Board of Supervisors*, 238 P.3d 626 (Ariz. Ct. App. 2010) in support of its position, but *Arpaio* is easily distinguishable. There, the Arizona legislature passed a bill that required each county to transfer money to the state's general fund. 238 P.3d at 628. Maricopa County's share was $24 million, and the Maricopa County Board of Supervisors voted to "designate and transfer sums from twenty-six special revenue funds." *Id.* The Maricopa County Sheriff and Maricopa County Attorney filed suit "seeking injunctive relief and a declaratory judgment alleging the Board unlawfully seized more than $24 million from special revenue funds established for the use and administration" in other areas. *Id.* at 629. After the superior court ruled against the plaintiffs, Maricopa County transferred the funds to the state. *Id.* On appeal, the court ordered supplemental briefing on "whether the operation of Arizona's notice of claim statute and the fact that no notices of claim had been filed against either governmental entity . . . would render the Sheriff's claims moot." *Id.* at 630 (citation omitted). Although the court acknowledged that, in general, "one who seeks declaratory relief need not comply with" the notice of claim statute, it concluded that the because the plaintiffs' claim against the state was effectively a request for an injunction requiring a public entity to transfer money out of its coffers, "such a claim would indeed constitute the type of claim requiring compliance with the notice of claim statute." *Id.* Similarly, because the claim against the Board of Supervisors was effectively a request to replenish the missing funds via "the reallocation of other funding within the County's budget," it was "logical to treat the Sheriff's contention as the equivalent of a damages claim, seeking recovery of funds he argues were inappropriately taken." *Id.*

No similar circumstances are present here.[2] The City does not contend that a favorable declaratory judgment would require a monetary judgment against the City or recovery of funds paid by Charter to the City. *Cf. Martineau,* 86 P.3d at 913 ("Appellants' claim for declaratory relief does not seek damages and would not result in any monetary award against the County even if successful (absent possible costs and attorneys' fees), and therefore would have no direct effect upon the County's financial planning or budgeting."). The City similarly does not contend that a favorable injunction would require the City to remit any payment to Charter. *Compare Rosenkrantz v. Ariz. Bd. of Regents*, 2020 WL 4346754, *2-3 (D. Ariz. 2020) (Arizona's notice of claim statute applied because plaintiffs "asserted they [were] entitled to a return of the pro-rated, unused funds" and were thus bringing "an action for monetary damages under the guise of seeking declaratory relief"). Nor has the City asserted that Charter's claims would be amenable to "minute itemization or to settlement for a sum certain," *Martineau*, 86 P.3d at 916, which further weighs against finding that Charter's claims are subject to the notice of claim statute. A.R.S. § 12-821.01(A) ("The claim shall also contain a specific amount for which the claim can be settled and the facts supporting that amount.").

The bottom line is that, although the City argues that the issuance of a judgment in Charter's favor would "implicat[e]" public funds (Doc. 12 at 8) and have a "substantial financial impact" on the City's budget and "financial planning" (Doc. 16 at 7), the City has not identified any public funds it would have to pay Charter to satisfy any judgment in

---

[2] Charter also cites various unpublished and depublished state court cases to support its argument (Doc. 13 at 8-9), but the Court may not use unpublished Arizona state court cases to interpret Arizona law. *See, e.g.*, Ariz. Sup. Ct. R. 111(c)(1) ("Memorandum decisions of Arizona state courts are not precedential . . . ."); *N. Improvement Co. v. United States*, 398 F. Supp. 3d 509, 522 (D. Ariz. 2019) ("Under Arizona law, [an unpublished] decision is not precedent and may be cited only to establish claim preclusion, issue preclusion, or law of the case, to assist a court in deciding whether to publish an opinion, grant a motion for reconsideration, or grant a petition for review, or for persuasive value if it was issued on or after January 1, 2015. None of these conditions applies. As a result, *U.S. Power* cannot, under Arizona law, be cited as precedent or even for its persuasive value.") (citation omitted); *CWT Can. II Ltd. P'ship v. Danzik*, 2018 WL 571797, *5 n.5 (D. Ariz. 2018) ("Counterdefendants cite a 2012 memorandum decision from the Arizona Court of Appeals, but that case may not be cited under Arizona Supreme Court Rule 111(c).").

Charter's favor. The Court acknowledges the City's assertion that a judgment in Charter's favor could "result in the actual physical removal of the City's critical emergency communications infrastructure or put the City in a position of vulnerability to whatever price Charter names." (Doc. 16 at 8.) Nevertheless, the City has not identified—nor has the Court identified in its own research—any published Arizona decision extending the notice of claim statute to claims for declaratory or injunctive relief that would not require a monetary judgment or transfer of funds and would only have an indirect impact, if any, on a public entity's budget. Declaratory judgments and injunctions are not valueless, *cf. Martinez v. Johnson & Johnson Consumer Inc.*, — F. Supp. 3d —, 2020 WL 3820392, *2 (C.D. Cal. 2020) ("When the plaintiff seeks injunctive relief, the cost of complying with the injunction is included in the amount in controversy."), yet Arizona has long exempted them from the notice of claim statute, with only few exceptions not applicable here.[3]

III.   Count Two

Count Two of Charter's complaint is a federal claim. Unfortunately, the complaint is somewhat ambiguous in its description of the nature of this claim. Some portions of the complaint suggest that Count Two is a claim arising directly under the Cable Act. (Doc. 1 ¶ 18 ["The Court has federal question jurisdiction . . . . [because] Charter asserts claims against the City under the federal Cable Act."]; *id.* at 16 [heading of Count Two: "Violation of Cable Act, 47 U.S.C. § 556(b)"].) Other portions of the complaint suggest that Count Two is actually a preemption claim arising under the Supremacy Clause of the Constitution. (*Id.* ¶ 109 ["The City's refusal to obey state franchising law . . . is inconsistent with the recognition of state authority in the federal framework and is therefore

---

[3]   Charter stated in its response that the City "purported to offer Charter a 'standard form of uniform video service license agreement for video service providers'" on August 13, 2020. (Doc. 13 at 5 n.1.) The City argues in its reply that its issuance of a uniform video service license renders the issue of failing to provide a uniform video service license moot, so the "case now affects [two of the Agreements] only." (Doc. 16 at 2-3.) Because the City does not argue that these developments render this entire action moot, and because the issue of partial mootness was raised for the first time in the City's reply, the Court declines to rule on the issue at this time. *ThermoLife Int'l LLC v. NeoGenis Labs Inc.*, 2020 WL 6395442, *7 (D. Ariz. 2020) ("The Court declines to rule on this argument, which ThermoLife raised for the first time in a reply and which has not been fully briefed by the parties.").

preempted. *See* U.S. Const. art. VI, cl. 2; 47 U.S.C. § 556(c)."].)

The City, which interprets Count Two as a direct claim under the Cable Act, argues this claim must be dismissed because Section 556(b) "contains no clause that would permit a company like Charter to file a claim to enforce the provision—there is no private right of action created by the clause." (Doc. 12 at 10.) Charter responds that it may seek declaratory and injunctive relief from "a state actor engaging in conduct that is preempted under federal law" and, therefore, violates the Supremacy Clause. (Doc. 13 at 10.) The City replies that a Supremacy Clause argument is foreclosed because Charter did not plead a Supremacy Clause claim. (Doc. 16 at 9.)

"It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights. A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question . . . ." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983) (citation omitted). *See also Cal. Tow Truck Ass'n v. City & County of San Francisco*, 693 F.3d 847, 857 (9th Cir. 2012) (preemption challenge to city ordinances presented a federal question under *Shaw*); *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015) (holding that the Supremacy Clause does not contain an implied right of action but recognizing that the "ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England").

The Court disagrees with the City that Charter has failed to plead a preemption claim. As noted, paragraph 109 of the complaint specifically uses the word "preemption" and cites the Supremacy Clause. The City's argument that Section 556 does not confer a private right of action is thus irrelevant. *See, e.g.*, *Bud Antle, Inc. v. Barbosa*, 45 F.3d 1261, 1269 (9th Cir. 1994) ("[I]t appears to be the general rule that a private party may seek declaratory and injunctive relief against the enforcement of a state statutory scheme on the ground of federal preemption. Even in the absence of an explicit statutory provision

establishing a cause of action, a private party may ordinarily seek declaratory and injunctive relief against state action on the basis of federal preemption.") (citations omitted). It is unfortunate that the complaint contains other paragraphs that suggest Count Two arises under the Cable Act, but this "amounted to no more than inartful pleading, an error that does not in itself constitute an actual defect of federal jurisdiction." *Nationwide Mut. Ins. Co. v. Liberatore*, 408 F.3d 1158, 1162 (9th Cir. 2005) (internal quotation marks omitted) (holding the district court did not err in denying a motion to dismiss where the "existence of federal subject-matter jurisdiction, predicated on federal question jurisdiction, was clear"). *See also* 1 Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 8, at 164 (2020) (Rule 8(e) "stands as a reminder that, when enforcing the pleading requirements, courts must not exalt form over substance or rely on errors in draftsmanship to bar justice.") (footnote and internal quotation marks omitted).

IV. <u>Count Three</u>

The City argues that "[b]ecause Counts I and II fail," Charter's third count, a request for declaratory relief, should be dismissed as well. (Doc. 12 at 11.) Because Counts One and Two have not been dismissed, this argument fails.

Accordingly,

**IT IS ORDERED** that the City's motion to dismiss (Doc. 12) is **denied**.

Dated this 15th day of December, 2020.

Dominic W. Lanza
United States District Judge