QUARLES & BRADY LLP
Firm State Bar No. 00443100
Renaissance One, Two N. Central
Phoenix, AZ 85004-2391
602-229-5200
C. Bradley Vynalek (020051)
Bradley.Vynalek@quarles.com
Lauren Elliott Stine (025083)
Lauren.Stine@quarles.com

SHEPPARD MULLIN RICHTER &
  HAMPTON
2099 Penn. Avenue, NW, Suite 100
Washington, D.C. 20006-6801
202-747-1931
Paul Werner* (DC 482637; VA 48910)
pwerner@sheppardmullin.com
Imad Matini* (DC 155312; VA 90126; NY
5302419)
imatini@sheppardmullin.com

*Admitted *pro hac vice*

*Attorneys for Charter*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Spectrum Pacific West, LLC, | No. 2:20-CIV-1204-ROS |
| Plaintiff, | |
| v. | **CHARTER'S ANSWER TO DEFENDANT-COUNTERCLAIMANT'S AMENDED COUNTERCLAIMS** |
| City of Yuma, Arizona | |
| Defendant. | |

### ANSWER TO AMENDED COUNTERCLAIMS

Pursuant to Rule 12 of the Federal Rules of Civil Procedure and the Court's August 8, 2022 Order (Dkt. 92), Charter Spectrum Pacific West, LLC ("Charter"), responds to the Amended Counterclaims (Dkt. 71) of Defendant-Counterclaimant City of Yuma, Arizona (the "City"), and responds as follows:

### INTRODUCTION

1.      The issues in this Amended Counterclaim stem from two separate contractual agreements between Yuma and Spectrum: (1) the February 1, 2015, CityNet Indefeasible Right-of-Use Agreement (the "IRU Agreement"); and (2) the February 1, 2015, CityNet Maintenance Agreement (the "IRU Maintenance Agreement") (collectively the "IRU Agreements").

**ANSWER:**   Charter admits that Charter and the City are parties to the IRU Agreements.  The remaining allegations in Paragraph 1 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter denies the remaining allegations in Paragraph 1 of the Amended Counterclaims.  Except as specifically admitted, Charter denies the allegations in Paragraph 1 of the Amended Counterclaims.

2.      Indefeasible right of use ("IRU") agreements, such as the IRU Agreements at issue here, are contractual agreements that cannot be "defeated, revoked, or lost," between the owners of a cable/fiber system and a user of a part of that system. (Black's Law Dictionary, 783, 8th Ed. 2004). Essentially, the user purchases the right to use a specific amount of the capacity of the system or separate strands of fiber, in this case, the City Fibers, for a specified number of years (twenty years for the City Fibers).

**ANSWER:**   The allegations in Paragraph 2 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter denies the allegations in Paragraph 2 of the Amended Counterclaims. Charter further states the IRU Agreements are documents that speak for themselves.

3.      This City's interest in the City Fibers is a property interest.

**ANSWER:**  The allegations in Paragraph 3 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter denies the allegations in Paragraph 3 of the Amended Counterclaims.

4.    The City's property interest in the City Fibers was not acquired as an exaction.

**ANSWER:**  The allegations in Paragraph 4 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter denies the allegations in Paragraph 4 of the Amended Counterclaims.

5.    The City's property interest in the City Fibers was a bargained for exchange with Spectrum's predecessors.

**ANSWER:**  The allegations in Paragraph 5 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter denies the allegations in Paragraph 5 of the Amended Counterclaims.

6.    The City Fibers consist of "a duplex (2) fiber connection (with the exception of City Hall to Police Depart and City Hall to Public Works which will have 4 fiber connections route diversified using the Time Warner Cable [Loop]." *See* Dkt. No. 1, p 101.

**ANSWER:**  The allegations in Paragraph 6 of the Amended Counterclaims purport to quote, summarize, or derive from the parties' IRU Agreement, which speaks for itself, and Charter denies any characterization of its contents that is inconsistent with its text.

7.    City Fibers also include "such replacement strands or additional strands as may be constructed by Grantor and paid for pursuant to the IRU Maintenance Agreement, and shall comprise the 'CityNet.'" *See* Dkt. No. 1, pg 92-93.

**ANSWER:** The allegations in Paragraph 7 purport to quote, summarize, or derive from the parties' IRU Agreement, which speaks for itself, and Charter denies any characterization of its contents that is inconsistent with its text.

8.    Spectrum's predecessor, Time Warner Cable Pacific West, LLC ("Time Warner"), granted the City an exclusive property interest in the City Fibers, including a right of access to "the City Fibers and any related facilities on Grantor's side of the Demarcation Point as necessary to perform installation and maintenance, or other actions permitted or

required under this Agreement or the Maintenance Agreement, to the extent that Grantor has failed or is no longer obligated to do so." *See* Dkt. No. 1, p 93.

**ANSWER:** The allegations in Paragraph 8 of the Amended Counterclaims assert legal conclusions to which no response is required. To the extent a response is deemed required, Charter denies the allegations in Paragraph 8 of the Amended Counterclaims. Answering further, the allegations in Paragraph 8 purport to quote, summarize, or derive from the parties' IRU Agreement, which speaks for itself, and Charter denies any characterization of its contents that is inconsistent with its text.

9.      The consideration for Spectrum's predecessor in interest under the IRU Agreement for the initial City Fibers was fully paid at the time of execution through the elimination of "Grantor's obligation to provide a Sub-I-Net, and eliminate Grantor's obligation to maintain certain spare fibers for the use of the City." Document 1, p 92.

**ANSWER:** The allegations in Paragraph 9 of the Amended Counterclaims assert legal conclusions to which no response is required. To the extent a response is deemed required, Charter denies the allegations in Paragraph 9 of the Amended Counterclaims. Answering further, the allegations in Paragraph 9 purport to quote, summarize, or derive from the parties' IRU Agreement, which speaks for itself, and Charter denies any characterization of its contents that is inconsistent with its text.

10.      The parties intended to transfer and vest the IRU Agreement rights immediately under the belief "that this agreement is not an executory contract, because all of the obligations of the parties have been fully performed, and because this Agreement does not create ongoing contractual obligations, but instead completes the transfer of the interest provided for herein." *See* Dkt. No. 1, p 98.

**ANSWER:** The allegations in Paragraph 10 of the Amended Counterclaims assert legal conclusions to which no response is required. To the extent a response is deemed required, Charter denies the allegations in Paragraph 10 of the Amended Counterclaims. The allegations in Paragraph 10 purport to quote, summarize, or derive from the parties'

IRU Agreement, which speaks for itself, and Charter denies any characterization of its contents that is inconsistent with its text.

11.     Subsequently, the City added additional strands to the City Fibers to connect new City sites which the City paid for as provided in the IRU Maintenance Agreement.

**ANSWER:**  Charter admits that additional strands were added to the City Fibers. The remaining allegations in Paragraph 11 assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter denies the allegations in Paragraph 11 of the Amended Counterclaims.  Except as specifically admitted, Charter denies the allegations in Paragraph 11 of the Amended Counterclaims.

12.     As part of the IRU Agreement, Spectrum, as successor in interest to Time Warner, covenanted to "take all steps reasonably necessary to provide further assurance to the City of the effectiveness of this transfer, and ***will take no actions to impair or cast doubt upon the continuing effect of this Agreement*** as a complete and irrevocable transfer of a right of use." *See* Dkt. No. 1, p 98 [emphasis added].

**ANSWER:**  The allegations in Paragraph 12 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is deemed required, the allegations in Paragraph 12 purport to quote, summarize, or derive from the parties' IRU Agreement, which speaks for itself, and Charter denies any characterization of its contents that is inconsistent with its text.

13.     By filing this lawsuit, Spectrum has breached this covenant and the IRU Agreement, seeking instead to have this Court declare the IRU Agreement void under state law, the Uniform Video Service License statute codified as A.R.S. §§ 9-1401, *et seq.* (the "Uniform Video Law").

**ANSWER:**  The allegations in Paragraph 13 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter denies the allegations in Paragraph 13 of the Amended Counterclaims.

14.     As part of the IRU Agreement, Spectrum, as successor in interest to Time Warner, entered into a covenant "that in the event a decision by a telecommunications

1  regulatory authority at the federal or state level necessitates modifications in this Agreement,

2  ***the parties will negotiate in good faith to modify this Agreement in light of such decision.***"

3  *See* Dkt. No. 1, p 95 [emphasis added].

4      **ANSWER:**  The allegations in Paragraph 14 of the Amended Counterclaims assert

5  legal conclusions to which no response is required.  To the extent a response is deemed

6  required, the allegations in Paragraph 14 purport to quote, summarize, or derive from the

7  parties' IRU Agreement, which speaks for itself, and Charter denies any characterization of

8  its contents that is inconsistent with its text.

9      15.    By filing this lawsuit, Spectrum has breached this covenant, rather than

10  seeking to negotiate what Spectrum asserts is a far-reaching change in state law that would

11  require this Court declare that which cannot be "defeated, revoked, or lost," void and of no

12  effect.

13      **ANSWER:**  The allegations in Paragraph 15 of the Amended Counterclaims assert

14  legal conclusions to which no response is required.  To the extent a response is deemed

15  required, Charter denies the allegations in Paragraph 15 of the Amended Counterclaims.

16      16.    The IRU Maintenance Agreement, like the IRU Agreement, is a separate

17  Agreement and provides, "This Agreement is not part of, or entered into, as a condition of

18  being issued a new, renewed or amended License to provide cable service . . . This

19  Agreement provides for no in-kind services or payments to the City but instead is a

20  transaction supported by fair and reasonable consideration. Time Warner Cable may not

21  offset any costs associated with this Agreement against any fee levied or assessed against it

22  under it License." *See* Dkt. No. 1, pg 123.

23      **ANSWER:**  The allegations in Paragraph 16 assert legal conclusions to which no

24  response is required.  To the extent a response is deemed required, Charter denies the

25  allegations in Paragraph 16 of the Amended Counterclaims.  Answering further, the

26  remaining allegations in Paragraph 16 purport to quote, summarize, or derive from the

27  parties' IRU Maintenance Agreement, which speaks for itself, and Charter denies any

28  characterization of its contents that is inconsistent with its text.

17.    The IRU Agreement states on the face of the agreement, "the parties desire to enter into a *separate agreement* for an institutional network that will *preserve the City's rights to use City Fibers* . . . [which] *addresses the rights of the parties with respect to the use of City Fibers* . . . which is a separate Agreement for which there is separate consideration." *See* Dkt. No. 1, pg 92.

**ANSWER:** The allegations in Paragraph 17 purport to quote, summarize, or derive from the parties' IRU Agreement, which speaks for itself, and Charter denies any characterization of its contents that is inconsistent with its text.

18.    Under the terms of the IRU Agreements, Yuma paid separate consideration for the installation of the City Fibers and has paid, and continues to pay, separate consideration for the maintenance of the City Fibers, which Yuma utilizes for the sole purpose of maintaining critical infrastructure communications between Yuma's government facilities.

**ANSWER:**  The allegations in Paragraph 18 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is deemed required, on information and belief, the City uses the City Fibers to maintain communications between the City's government facilities. Charter lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 18 of the Amended Counterclaims, and therefore denies them.

19.    Spectrum seeks to void the IRU Agreements and replace them with other written contractual agreements that will charge Yuma substantially higher costs for the very City Fibers Yuma already paid to install.

**ANSWER:**  The allegations in Paragraph 19 assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter denies the allegations in Paragraph 19 of the Amended Counterclaims.

20.    Under the IRU Agreements Yuma pays annual maintenance costs of approximately $35,000 a year (subject to escalation terms), but Spectrum wants to force Yuma into other "business arrangements" that would impose annual costs believed to be in

excess of $170,000 a year for the right to use those very same City Fibers, fibers the City already has an indefeasible right to use.

**ANSWER:** The allegations in Paragraph 20 assert legal conclusions to which no response is required. To the extent a response is deemed required, Charter denies the allegations in Paragraph 20 of the Amended Counterclaims. Answering further, the remaining allegations in Paragraph 20 purport to quote, summarize, or derive from documentary evidence, which speak for themselves, and Charter denies any characterization of their content that is inconsistent with their text.

21. In the 13 remaining years of the IRU Agreements, this results in contractual damages to the City of approximately $1,755,000.

**ANSWER:** The allegations in Paragraph 21 assert legal conclusions to which no response is required. To the extent a response is deemed required, Charter denies the allegations in Paragraph 21 of the Amended Counterclaims.

22. Spectrum's lawsuit does not merely create some incidental economic impact associated with the intended purpose of the Uniform Video Law, but seeks to expand the purpose of the statute (in a way no other video service provider in the State of Arizona has sought) in order to void indefeasible rights granted to Yuma for its critical communications infrastructure, which will cost Yuma millions of dollars.

**ANSWER:** The allegations in Paragraph 22 assert legal conclusions to which no response is required. To the extent a response is deemed required, Charter denies the allegations in Paragraph 22 of the Amended Counterclaims.

## PARTIES/JURISDICTION

23. The City of Yuma ("Yuma") is an Arizona municipal corporation.

**ANSWER:** The allegations in Paragraph 23 of the Amended Counterclaims assert legal conclusions to which no response is required. To the extent a response is deemed required, Charter states Yuma is an Arizona political subdivision and citizen of the State of Arizona for diversity jurisdiction purposes.

24.     Upon information and belief, Spectrum Pacific West, LLC, formally known as Time Warner Cable Pacific West, LLC ("Spectrum"), is a Delaware limited liability company registered as a foreign entity to transact business within the State of Arizona.

**ANSWER:**  The allegations in Paragraph 24 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter states Spectrum Pacific West, LLC, is a Delaware limited liability company registered as a foreign entity to transact business within the State of Arizona.

25.     Spectrum's Complaint is brought under the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, and this Amended Counterclaim is submitted pursuant to 28 U.S.C. § 1332 and within the Court's pendent jurisdiction.

**ANSWER:**  The allegations in Paragraph 25 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter states that the Court has subject matter jurisdiction.

26.     Yuma asserts that venue is proper at the John M. Roll United States Courthouse (the "John M. Roll Courthouse") in Yuma, Arizona, established to accommodate litigants in rural Arizona, such as Yuma, which is domiciled in Yuma County.

**ANSWER:**  The allegations in Paragraph 26 assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter denies the allegations of Paragraph 26 of the Amended Counterclaims.

**GENERAL ALLEGATIONS**

27.     Yuma re-alleges and incorporates by reference the allegations and statements set forth in Paragraphs 1 through 26 of its Amended Counterclaim as if fully set forth herein.

**ANSWER:**  Charter re-affirms and incorporates by reference its answers to Paragraphs 1 through 26 of this Answer in response to Paragraph 27 of the Amended Counterclaims.

28.     In bringing this Amended Counterclaim, Yuma *does not* concede that Arizona's Uniform Video Law is valid and continues to reserve all available defenses including but not limited to vested contract rights, property rights, and constitutional

defenses with regard to the validity of the statute where the statute conflicts with federal and other state laws.

**ANSWER:**  The allegations in Paragraph 28 assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 28 of the Amended Counterclaims.

29.    Yuma and Spectrum (including Spectrum's predecessors) have had a long-standing contractual relationship concerning cable services in the jurisdictional limits of the City of Yuma.

**ANSWER:**  The allegations in Paragraph 29 assert legal conclusions to which no response is required.

30.    That contractual relationship dates back to 1995, when Spectrum's predecessor obtained a license from Yuma to provide cable services to the residents of Yuma (the "1995 License").

**ANSWER:**  On information and belief, Charter admits its predecessor obtained a license from the City on or around 1995.  Except as specifically admitted, Charter denies the allegations in Paragraph 30 of the Amended Counterclaims.

31.    Under federal and state law, cable providers must have a franchise or license agreement with a local government to operate its cable system in the public rights-of-way.

**ANSWER:**  The allegations in Paragraph 31 assert legal conclusions to which no response is required.

32.    For purposes of this Amended Counterclaim, Spectrum and its predecessors shall be collectively referred to as "Spectrum."

**ANSWER:**  The allegations in Paragraph 32 do not require a response.  To the extent a response is deemed required, Charter states that the Amended Counterclaims state that the Amended Counterclaims refer to Spectrum and its predecessors as "Spectrum."

33.    As part of the 1995 License, and in a series of settlements and agreements entered into between 1995 and 2015, Spectrum's predecessors agreed to certain terms and

conditions in return for the License, based on, *inter alia*, the unauthorized transfer of the license to another entity.

**ANSWER:**  The allegations in Paragraph 33 assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter denies the allegations in Paragraph 33 of the Amended Counterclaims.  Answering further, the allegations in Paragraph 33 purport to quote, summarize, or derive from prior agreements between the parties and Charter's predecessor, which speak for themselves, and Charter denies any characterization of their contents that are inconsistent with their text.

34.    During the course of those relationships, the parties were able to settle performance disputes, and other issues, which ultimately resulted in the establishment of separate contractual agreements, the IRU Agreement and the IRU Maintenance Agreement distinct from the License to use and occupy the rights-of-way to provide cable service.

**ANSWER:**  The allegations in Paragraph 34 assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter denies the allegations in Paragraph 34 of the Amended Counterclaims.  Answering further, the allegations in Paragraph 34 purport to summarize, quote, or derive from documentary evidence or electronic sources, which speak for themselves, and Charter denies any characterization of their contents that is inconsistent with their text.

35.    While the 1995 License was scheduled to expire in 2005, the parties repeatedly extended it, and the 2015 License Agreement was a further extension of that license, with some important differences. While the 1995 License included an institutional network requirement, in 2015, following an earlier bankruptcy of one of Spectrum's predecessors and a number of legislative changes, the parties agreed to enter into a separate License Agreement, a separate IRU Agreement, and a separate IRU Maintenance Agreement.

**ANSWER:**  The allegations in Paragraph 35 assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter denies the allegations in Paragraph 35 of the Amended Counterclaims.  Answering further, the allegations in Paragraph 35 purport to summarize, quote, or derive from documentary

evidence or electronic sources, which speak for themselves, and Charter denies any characterization of their contents that is inconsistent with their text.

36.    The IRU Agreement and IRU Maintenance Agreement are commercial agreements in which under the former, Spectrum's predecessor granted Yuma a property interest in the City Fibers and under the latter, Yuma pays Spectrum to provide Yuma with maintenance and construction services for those City Fibers.

**ANSWER:**  The allegations in Paragraph 36 assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter denies the allegations in Paragraph 36 of the Amended Counterclaims. Answering further, the allegations in Paragraph 36 purport to quote, summarize, or derive from prior agreements between the parties and Charter's predecessor, which speak for themselves, and Charter denies any characterization of their contents that are inconsistent with their text.

37.    By their terms, each Agreement is separate and apart from the License Agreement, and supported by separate consideration.

**ANSWER:**  The allegations in Paragraph 37 assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter denies the allegations in Paragraph 37 of the Amended Counterclaims. Answering further, the allegations in Paragraph 37 purport to quote, summarize, or derive from prior agreements between the parties and Charter's predecessor, which speak for themselves, and Charter denies any characterization of their contents that are inconsistent with their text.

**The IRU Agreement**

38.    The IRU Agreement, dated February 1, 2015, between Yuma and Spectrum grants Yuma an indefeasible right of use ("IRU") to specific optical fibers embedded in Spectrum's system and also extends the IRU to fiber that Yuma pays Spectrum to install in the future (the fiber and certain associated equipment are called the "City Fibers"). The system itself, which is an "institutional network" as that term is defined under federal law, was called CityNet.

1    **ANSWER:**  The allegations in Paragraph 38 assert legal conclusions to which no

2    response is required.   To the extent a response is deemed required, the allegations in

3    Paragraph 38 purport to quote, summarize, or derive from the parties' IRU Agreement,

4    which speaks for itself, and Charter denies any characterization of its contents that is

5    inconsistent with its text.

6         39.    The IRU Agreement is attached as Exhibit "E" to Spectrum's Complaint and

7    incorporated herein by this reference.

8    **ANSWER:**  Charter admits it attached a copy of the IRU Agreement as Exhibit E to

9    its Complaint.  Except as specifically admitted, Charter denies the allegations in Paragraph

10   39 of the Amended Counterclaims.

11        40.    The IRU Agreement is independent of, and has a longer term than the 2015

12   License.

13   **ANSWER:**  The allegations in Paragraph 40 assert legal conclusions to which no

14   response is required.   To the extent a response is deemed required, the allegations in

15   Paragraph 40 purport to quote, summarize, or derive from the parties' IRU Agreement,

16   which speaks for itself, and Charter denies any characterization of its contents that is

17   inconsistent with its text.

18        41.    The IRU Agreement does not depend on Spectrum continuing to hold a

19   License to provide video services, and is not tied to Spectrum's status under the Cable Act,

20   or state law.

21   **ANSWER:**  The allegations in Paragraph 41 assert legal conclusions to which no

22   response is required.   To the extent a response is deemed required, Charter denies the

23   allegations in Paragraph 41 of the Amended Counterclaims.   Answering further, the

24   allegations in Paragraph 41 purport to quote, summarize, or derive from the parties' IRU

25   Agreement, which speaks for itself, and Charter denies any characterization of its contents

26   that is inconsistent with its text.

27        42.    The City of Yuma has other indefeasible rights of use agreements and

28   maintenance agreements, similar to the IRU Agreements at issue in this lawsuit.

**ANSWER:**  The allegations in Paragraph 42 assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 42 of the Amended Counterclaims, and therefore denies the allegations in Paragraph 42 of the Amended Counterclaims.

43.    The IRU Agreement with Spectrum does not expire until January 31, 2035, or if earlier, the date that Spectrum ceases to provide any service, of any sort, in Yuma. The IRU Agreement is also subject to termination for cause, which causes do not include compliance or non-compliance with the 2015 License Agreement.

**ANSWER:**  The allegations in Paragraph 43 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is deemed required, the allegations in Paragraph 43 purport to quote, summarize, or derive from the parties' IRU Agreement, which speaks for itself, and Charter denies any characterization of its contents that is inconsistent with its text.

44.    The IRU Agreement's stated purpose was for a "separate agreement for an institutional network that will preserve the City's rights to use City Fibers . . .; that will eliminate [Spectrum's] obligation to provide a Sub-I-Net, and eliminate [Spectrum's] obligation to maintain certain spare fibers for the use of the City; and further desire to enter into an agreement under which [Spectrum] will agree to provide certain services to the City (the 'CityNet Maintenance Agreement')." *See* Recitals in the IRU Agreement.

**ANSWER:**  The allegations in Paragraph 44 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is deemed required, the allegations in Paragraph 44 of the Amended Counterclaims purport to quote, summarize, or derive from the parties' IRU Agreement, which speaks for itself, and Charter denies any characterization of its contents that is inconsistent with its text.

45.    The parties further agreed (in Section 4) that Spectrum had been fully paid for the existing fibers by Yuma (and would be fully paid for any future fibers).

1    **ANSWER:**  The allegations in Paragraph 45 of the Amended Counterclaims assert
2    legal conclusions to which no response is required.  To the extent a response is deemed
3    required, Charter denies the allegations in Paragraph 45 of the Amended Counterclaims.
4    Answering further, the allegations in Paragraph 45 purport to quote, summarize, or derive
5    from the parties' IRU Agreement, which speaks for itself, and Charter denies any
6    characterization of its contents that is inconsistent with its text.

7    46.    That consideration included the release of claims by Yuma that otherwise
8    might have arisen under the 1995 License.

9    **ANSWER:**  The allegations in Paragraph 46 of the Amended Counterclaims assert
10   legal conclusions to which no response is required.  To the extent a response is deemed
11   required, Charter denies the allegations in Paragraph 46 of the Amended Counterclaims.
12   Answering further, the allegations in Paragraph 46 purport to quote, summarize, or derive
13   from the documentary evidence, which speaks for itself, and Charter denies any
14   characterization of its contents that is inconsistent with its text.

15   47.    The parties agreed that the releases would be included in other documents, and
16   in fact, a release was included when the License was extended, in Section 2(j) of the 2015
17   License Agreement and further acknowledged in Section 2(b) of the Transfer Agreement,
18   attached as Exhibit "C" to Spectrum's Complaint and incorporated by this reference.

19   **ANSWER:**  Charter admits it attached a copy of the Transfer Agreement as Exhibit
20   C to its Complaint.    The remaining allegations in Paragraph 47 of the Amended
21   Counterclaims assert legal conclusions to which no response is required.  To the extent a
22   response is deemed required, Charter denies the allegations in Paragraph 47 of the Amended
23   Counterclaims.    Answering further, the allegations in Paragraph 47 purport to quote,
24   summarize, or derive from documentary evidence and the parties' agreements, which speak
25   for themselves, and Charter denies any characterization of their contents that are inconsistent
26   with their text.  Except as specifically admitted, Charter denies the allegations in Paragraph
27   47 of the Amended Counterclaims.

28   48.    The IRU Agreement vested certain property rights to Yuma upon execution:

> Subject to the terms and conditions of this Agreement, Grantor hereby grants to the City an indefeasible right of use ("IRU") to use the City Fibers during the Term (as defined below). This grant is a transfer to the City of rights to exclusive use of the City Fibers sufficient to grant the City an exclusive and irrevocable right to use the fibers during the Term, the term "use" including not just the right to send signals to and through the fibers, but to attach devices to the fibers, and to splice and maintain the fibers subject to those limits set forth herein. Grantor may take no action with respect to the City Fibers that would prevent its continued use by the City, or otherwise adversely affect the rights of the City granted herein, except with the City's Consent.

*See* Section 1.1 of the IRU Agreement.

**ANSWER:**  The allegations in Paragraph 48 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter denies the allegations in Paragraph 48 of the Amended Counterclaims. Answering further, the allegations in Paragraph 48 purport to quote, summarize, or derive from the parties' IRU Agreement, which speaks for itself, and Charter denies any characterization of its contents that is inconsistent with its text.

49.     The high degree of autonomy and exclusive use provided to Yuma for the City Fibers in the IRU Agreement reflects the extent of the property interest which includes a right "to have access to the City Fibers *and any related facilities on [Spectrum's] side* of the Demarcation Point as necessary to perform installation and maintenance, or other actions permitted or required under this Agreement or the Maintenance Agreement, to the extent that Grantor has failed or is no longer obligated to do so." *See* Paragraph 1.2 of the IRU Agreement.

**ANSWER:**  The allegations in Paragraph 49 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter denies the allegations in Paragraph 49 of the Amended Counterclaims. Answering further, allegations in Paragraph 49 purport to quote, summarize, or derive from the parties' IRU Agreement, which speaks for itself, and Charter denies any characterization of its contents that is inconsistent with its text.

50.     The IRU Agreement further states that Yuma "shall have the exclusive use of the City Fibers, subject to any use restrictions set forth in the [IRU] Maintenance Agreement." *See* Paragraph 3.3.1 of the IRU Agreement.

**ANSWER:**  The allegations in Paragraph 50 purport to quote, summarize, or derive from the parties' IRU Agreement, which speaks for itself, and Charter denies any characterization of its contents that is inconsistent with its text.

51.     The IRU Agreement provides Yuma with the City Fibers to Yuma's critical emergency infrastructure connecting various facilities, including, but not limited to: (1) the Yuma Police Department; (2) Fire Station No. 1; (3) City Hall; (4) Yuma County Sheriff's Office; (5) Main Street Water Treatment Plant; (6) Police Evidence; (7) Agua Viva Water Treatment Plant; (8) Fire Station No. 2; (9) Fire Station No. 3; (10) Fire Station No. 4; (11) Fire Station No. 5; (12) Fire Station No. 6; (13) Public Works; (14) Municipal Court; (15) City Prosecutor; (16) Police Department Substation; (17) Desert Dunes Water Plant; (18) Figueroa Water Plant; and (19) the Readiness Center.

**ANSWER:**  The allegations in Paragraph 51 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is required, the allegations in Paragraph 51 purport to quote, summarize, or derive from the parties' IRU Agreement, which speaks for itself, and Charter denies any characterization of its contents that is inconsistent with its text.  Answering further, Charter lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 51 of the Amended Counterclaims.

52.     The IRU Agreement further provides that it is the "intent and understanding of the parties in entering into the Agreement, to create a transfer of rights to Yuma and that the "parties believe that the IRU Agreement is not an executory contract, because all of the obligations of the parties have been fully performed, and because this Agreement does not create ongoing contractual obligations, but instead completes the transfer of interests provided for herein." See Section 11.3 of the IRU Agreement.

**ANSWER:**  The allegations in Paragraph 52 purport to quote, summarize, or derive from the parties' IRU Agreement, which speaks for itself, and Charter denies any characterization of its contents that is inconsistent with its text.

53.     The IRU Agreement is binding upon each of the parties' respective successors and permitted assigns. See Paragraph 11.4 of the IRU Agreement.

**ANSWER:**  The allegations in Paragraph 53 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is deemed required, the allegations in Paragraph 53 purport to quote, summarize, or derive from the parties' IRU Agreement, which speaks for itself, and Charter denies any characterization of its contents that is inconsistent with its text.

54.     The IRU Agreement is governed and construed in accordance with the laws of the State of Arizona.

**ANSWER:**  The allegations in Paragraph 54 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is deemed required, the allegations in Paragraph 54 purport to quote, summarize, or derive from the parties' IRU Agreement, which speaks for itself, and Charter denies any characterization of its contents that is inconsistent with its text.

**The IRU Maintenance Agreement**

55.     At the same time Yuma and Spectrum entered into the IRU Agreement, the parties executed a separate agreement for the maintenance of the City Fibers, the IRU Maintenance Agreement.

**ANSWER:**  Charter admits that Charter and the City are parties to the IRU Maintenance Agreement.  Answering further, the allegations in Paragraph 55 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter denies the allegations in Paragraph 55 of the Amended Counterclaims.  Answering further, the allegations in Paragraph 55 purport to quote, summarize, or derive from the parties' IRU Maintenance Agreement, which speaks for itself, Charter denies any characterization of its contents that is inconsistent with its text.

Except as specifically admitted, Charter denies the allegations in Paragraph 55 of the Amended Counterclaims.

56.    Under the IRU Agreement, Yuma has the right to maintain and repair City Fibers, which may be bundled together with other fibers that are not part of the CityNet, and which are used by Spectrum for commercial purposes.

**ANSWER:**  The allegations in Paragraph 56 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is deemed required, the allegations in Paragraph 56 purport to quote, summarize, or derive from the parties' IRU Agreement, which speaks for itself, and Charter denies any characterization of its contents that is inconsistent with its text.

57.    The IRU Maintenance Agreement provides a benefit to Spectrum, by allowing Spectrum to control the maintenance of the entirety of its network, on commercially acceptable terms.

**ANSWER:**  The allegations in Paragraph 57 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter denies the allegations in Paragraph 57 of the Amended Counterclaims. Answering further, the allegations in Paragraph 57 purport to quote, summarize, or derive from the parties' IRU Maintenance Agreement, which speaks for itself, and Charter denies any characterization of its contents that is inconsistent with its text.

58.    The IRU Maintenance Agreement is attached as Exhibit "F" to Spectrum's Complaint and incorporated by this reference.

**ANSWER:**  Charter admits it attached a copy of the IRU Maintenance Agreement as Exhibit F to its Complaint.  Except as specifically admitted, Charter denies the allegations in Paragraph 58 of the Amended Counterclaims.

59.    The IRU Maintenance Agreement is independent of, and has a longer term than the 2015 License.

**ANSWER:**  The allegations in Paragraph 59 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is deemed

required, the allegations in Paragraph 59 purport to quote, summarize, or derive from the parties' IRU Maintenance Agreement, which speaks for itself, and Charter denies any characterization of its contents that is inconsistent with its text.

60.     The IRU Maintenance Agreement does not depend on Spectrum continuing to hold a License to provide video services, and is not tied to its status under the Cable Act, or state law. *See* Section 21 ("This Agreement is not part of, or entered into, as a condition of being issued a new, renewed or amended License to provide cable service. . . . This Agreement provides for no in-kind services or payments to the City but instead is a transaction supported by fair and reasonable consideration. [Spectrum] may not offset any costs associated with this Agreement against any fee levied or assessed against it under its License.").

**ANSWER:**  The allegations in Paragraph 60 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is required, Charter denies the allegations in Paragraph 60 of the Amended Counterclaims.  Answering further, the allegations in Paragraph 60 purport to quote, summarize, or derive from the parties' IRU Maintenance Agreement, the Cable Act, and Arizona state law, which speak for themselves, and Charter denies any characterization of their contents that is inconsistent with their text.

61.     The IRU Maintenance Agreement does not expire until January 31, 2035, or if earlier, the date Spectrum ceases to provide any services via its system in Yuma.

**ANSWER:**  The allegations in Paragraph 61 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is required, the allegations in Paragraph 61 purport to quote, summarize, or derive from the parties' IRU Maintenance Agreement, which speaks for itself, and Charter denies any characterization of its contents that is inconsistent with its text.

62.     The IRU Maintenance Agreement is also subject to termination for cause, which causes do not include compliance or non-compliance with the 2015 License Agreement.

1   **ANSWER:**  The allegations in Paragraph 62 of the Amended Counterclaims assert
2   legal conclusions to which no response is required.  To the extent a response is required, the
3   allegations in Paragraph 62 purport to quote, summarize, or derive from the parties' IRU
4   Maintenance Agreement, which speaks for itself, and Charter denies any characterization of
5   its contents that is inconsistent with its text.

6   63.   The IRU Maintenance Agreement provides for the maintenance of the City
7   Fibers at an agreed upon-fee.

8   **ANSWER:**  The allegations in Paragraph 63 of the Amended Counterclaims assert
9   legal conclusions to which no response is required.  To the extent a response is required, the
10   allegations in Paragraph 63 purport to quote, summarize, or derive from the parties' IRU
11   Maintenance Agreement, which speaks for itself, and Charter denies any characterization of
12   its contents that is inconsistent with its text.

13   64.   The fee is tied to the distance of the service point, and increases or decreases
14   as City Fibers are added or removed from service. *See* Section 2 of the IRU Maintenance
15   Agreement.

16   **ANSWER:**  The allegations in Paragraph 64 of the Amended Counterclaims assert
17   legal conclusions to which no response is required.  To the extent a response is required, the
18   allegations in Paragraph 64 purport to quote, summarize, or derive from the parties' IRU
19   Maintenance Agreement, which speaks for itself, and Charter denies any characterization of
20   its contents that is inconsistent with its text.

21   65.   In return for this annual payment, Spectrum agreed to maintain the system to
22   certain standards at a particular cost.

23   **ANSWER:**  The allegations in Paragraph 65 of the Amended Counterclaims assert
24   legal conclusions to which no response is required.  To the extent a response is required,
25   Charter denies the allegations in Paragraph 65 of the Amended Counterclaims.  Answering
26   further, the allegations in Paragraph 65 purport to quote, summarize, or derive from the
27   parties' IRU Maintenance Agreement, which speaks for itself, and Charter denies any
28   characterization of its contents that is inconsistent with its text.

66.     On information and belief, those standards create no additional burden for Spectrum.

**ANSWER:**   Charter denies the allegations in Paragraph 66 of the Amended Counterclaims.

67.     The IRU Maintenance Agreement also provides for construction of additional City Fibers for an agreed-upon fee, which is intended to permit Spectrum to recover all of its costs. *See* Sections 2 and 3 of the IRU Maintenance Agreement.

**ANSWER:** The allegations in Paragraph 67 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter denies the allegations in Paragraph 67 of the Amended Counterclaims. Answering further, the allegations in Paragraph 67 purport to quote, summarize, or derive from the parties' IRU Maintenance Agreement, which speaks for itself, and Charter denies any characterization of its contents that is inconsistent with its text.

68.     The IRU Maintenance Agreement also provides an opportunity for shared costs where a project would benefit both Spectrum and Yuma. *See* Section 3 of the IRU Maintenance Agreement.

**ANSWER:**  The allegations in Paragraph 68 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is deemed required, the allegations in Paragraph 68 purport to quote, summarize, or derive from the parties' IRU Maintenance Agreement, which speaks for itself, and Charter denies any characterization of its contents that is inconsistent with its text.

69.     Yuma further (in Section 20) relieved Spectrum of certain then-enforceable obligations under the 1995 License Agreement.

**ANSWER:**  The allegations in Paragraph 69 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is required, the allegations in Paragraph 69 purport to quote, summarize, or derive from the parties' IRU Maintenance Agreement, which speaks for itself, and Charter denies any characterization of its contents that is inconsistent with its text.

70.    The IRU Maintenance Agreement states on its face that it is a commercial arrangement, and contains enforceable terms and conditions for the maintenance and expansion of Yuma's internal network, the CityNet.

**ANSWER:**  The allegations in Paragraph 70 of the Amended Counterclaims assert legal conclusions to which no response is required.   To the extent a response is deemed required, the allegations in Paragraph 70 purport to quote, summarize, or derive from the parties' IRU Maintenance Agreement, which speaks for itself, and Charter denies any characterization of its contents that is inconsistent with its text.

71.    The IRU Maintenance Agreement limits Yuma's use of the City Fibers to lawful government purposes, and for purposes related to the transmission of signals associated with public, educational and government access channel use of the fibers and Yuma may not otherwise permit third-parties to use the City Fibers to provide video programing services. *See* Section 7(a) of the IRU Maintenance Agreement.

**ANSWER:**  The allegations in Paragraph 71 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is deemed required, the allegations in Paragraph 71 purport to quote, summarize, or derive from the parties' IRU Maintenance Agreement, which speaks for itself, and Charter denies any characterization of its contents that is inconsistent with its text.

72.    The IRU Maintenance Agreement is binding upon each of the parties' respective successors and permitted assigns. *See* Section 11 of the IRU Maintenance Agreement.

**ANSWER:**  The allegations in Paragraph 72 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is deemed required, the allegations in Paragraph 72 purport to quote, summarize, or derive from the parties' IRU Maintenance Agreement, which speaks for itself, and Charter denies any characterization of its contents that is inconsistent with its text.

73.    The IRU Maintenance Agreement is governed and construed in accordance with the laws of the State of Arizona.

**ANSWER:**  The allegations in Paragraph 73 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is deemed required, the allegations in Paragraph 73 purport to quote, summarize, or derive from the parties' IRU Maintenance Agreement, which speaks for itself, and Charter denies any characterization of its contents that is inconsistent with its text.

74.     The IRU Agreement and IRU Maintenance Agreement were not a condition of, or mandated by the 2015 License Agreement, and it was the specific intent of the parties to ensure that the IRU Agreements were in fact distinct and separate agreements not tied to or a part of the 2015 License.

**ANSWER:**  The allegations in Paragraph 74 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter denies the allegations in Paragraph 74 of the Amended Counterclaims. Answering further, the allegations in Paragraph 74 purport to quote, summarize, or derive from the parties' IRU Agreement and IRU Maintenance Agreement, which speak for themselves, and Charter denies any characterization of their contents that is inconsistent with their text.

75.     The IRU Agreement and IRU Maintenance Agreement are not classified as "video services" as defined by A.R.S. § 9-1401, and thus do not fall within the scope of A.R.S. § 9-1402, concerning licensing and regulation of video services under the Uniform Video Law.

**ANSWER:**  The allegations in Paragraph 75 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter denies the allegations in Paragraph 75.

76.     Further, the Arizona Statutes do not prevent localities from entering into contracts for services or facilities with any video service provider, and only reach contracts if "entered into as a condition of operating in the service area under a uniform video service license." *See* A.R.S. 9-1442(I).

1     **ANSWER:**  The allegations in Paragraph 76 of the Amended Counterclaims assert

2 legal conclusions to which no response is required.  To the extent a response is deemed

3 required, Charter denies the allegations in Paragraph 76.  Answering further, the allegations

4 in Paragraph 76 purport to quote, summarize, or derive from Arizona's Uniform Franchise

5 Law, which speaks for itself, and Charter denies any characterization of its contents that is

6 inconsistent with its text.

7     77.     To further demonstrate the separation between the IRU Maintenance

8 Agreement and the original 1995 License, the IRU Maintenance Agreement provided for a

9 release of various provisions of the 1995 License.

10     **ANSWER:**  The allegations in Paragraph 77 of the Amended Counterclaims assert

11 legal conclusions to which no response is required.  To the extent a response is deemed

12 required, the allegations in Paragraph 77 purport to quote, summarize, or derive from the

13 parties' IRU Maintenance Agreement, which speaks for itself, and Charter denies any

14 characterization of its contents that is inconsistent with its text.

15     **The 2015 License**

16     78.     On or about May 1, 2015, Yuma entered into the 2015 License with Spectrum,

17 which authorized Spectrum's use of Yuma's public rights-of-way for Spectrum's video

18 services.

19     **ANSWER:**  Charter admits the City and Charter are parties to a Cable Television

20 License Agreement ("City Franchise") entered into in 2015.  The remaining allegations in

21 Paragraph 78 assert legal conclusions to which no response is required.  To the extent a

22 response is deemed required, the allegations in Paragraph 78 purport to quote, summarize,

23 or derive from the parties' City Franchise, which speaks for itself, and Charter denies any

24 characterization of its contents that is inconsistent with its text.

25     79.     The 2015 License is attached as Exhibit "D" to Spectrum's Complaint and

26 incorporated herein by this reference.

27

28

1   **ANSWER:**  Charter admits it attached a copy of its 2015 license with the City as

2   Exhibit D to its Complaint.  Except as specifically admitted, Charter denies the allegations

3   in Paragraph 79 of the Amended Counterclaims.

4       80.    The 2015 License was set to expire on March 31, 2025.

5   **ANSWER:**  The allegations in Paragraph 80 assert legal conclusions to which no

6   response is required.  To the extent a response is deemed required, the allegations in

7   Paragraph 80 purport to quote, summarize, or derive from the parties' City Franchise, which

8   speaks for itself, and Charter denies any characterization of its contents that is inconsistent

9   with its text.

10      81.    The 2015 License concerned the provision of "Cable Service to residents of

11  the City" and oversight of Spectrum's cable services within Yuma's jurisdiction.

12  **ANSWER:**  The allegations in Paragraph 81 assert legal conclusions to which no

13  response is required.  To the extent a response is deemed required, the allegations in

14  Paragraph 81 purport to quote, summarize, or derive from the parties' City Franchise, which

15  speaks for itself, and Charter denies any characterization of its contents that is inconsistent

16  with its text.

17      82.    The 2015 License provided for regulation and oversight of Spectrum's

18  services, ensuring that residents of Yuma are adequately protected in connection with

19  construction costs, continuity of service, price increases, service interruptions, operation and

20  reporting requirements, audit provision and other necessary provisions to ensure that the

21  residents of Yuma are protected.

22  **ANSWER:**  The allegations in Paragraph 82 assert legal conclusions to which no

23  response is required.  To the extent a response is deemed required, Charter denies the

24  allegations in Paragraph 82 of the Amended Counterclaims. Answering further, the

25  allegations in Paragraph 82 purport to quote, summarize, or derive from the parties' City

26  Franchise, which speaks for itself, and Charter denies any characterization of its contents

27  that is inconsistent with its text.

28

83.    The 2015 License was subsequently replaced with a Uniform License at Spectrum's request pursuant to the Uniform Video Law.

**ANSWER:**  The allegations in Paragraph 82 assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter admits it eventually received a uniform video service license from the City.

84.    After the parties entered into the IRU Agreement, the IRU Maintenance Agreement and the 2015 License, Spectrum sought Yuma's approval to transfer the various agreements to another entity, CCH I, LLC.

**ANSWER:**  Charter admits it sought approval to transfer certain agreements to CCH I, LLC.  Except as specifically admitted, Charter denies the allegations in Paragraph 84 of the Amended Counterclaims.

85.    Pursuant to Spectrum's request, Yuma, Spectrum and CCH I, LLC entered into that certain Agreement Regarding Transfer of Control of Licensee from Time Warner Cable Inc. to CCH I, LLC (the "Transfer Agreement").

**ANSWER:**  Charter admits the City transferred the City Franchise and the IRU Agreements to CCH I, LLC on or about December 30, 2015.  Except as specifically admitted, Charter denies the allegations in Paragraph 85 of the Amended Counterclaims.

**The Transfer Agreement**

86.    The Transfer Agreement, dated December 30, 2015, authorized the transfer of the control of the 2015 License to Charter [Spectrum], but the Licensee continued to be the only holder of the 2015 License, the IRU Agreement and the IRU Maintenance Agreement.

**ANSWER:**  The allegations in Paragraph 86 assert legal conclusions to which no response is required.  To the extent a response is deemed required, the allegations in Paragraph 86 purport to quote, summarize, or derive from the parties' Transfer Agreement, which speaks for itself, and Charter denies any characterization of its contents that is inconsistent with its text.

87.    The Transfer Agreement is attached as Exhibit "C" to Spectrum's Complaint and incorporated by this reference.

**ANSWER:**  Charter admits it attached a copy of the Transfer Agreement as Exhibit C to its Complaint.  Except as specifically admitted, Charter denies the allegations in Paragraph 87 of the Amended Counterclaims.

88.     The Transfer Agreement does not have an expiration date.

**ANSWER:**  The allegations in Paragraph 88 assert legal conclusions to which no response is required.  To the extent a response is deemed required, the allegations in Paragraph 88 purport to quote, summarize, or derive from the parties' Transfer Agreement, which speaks for itself, and Charter denies any characterization of its contents that is inconsistent with its text.

89.     Among other things, the recitals of the Transfer Agreement state that "TWC [Spectrum] will remain the Licensee and the transaction will not result in any entity having rights inconsistent with the rights obtained by the City in the IRU Agreement or prevent TWC [Spectrum] from performing as promised in the Maintenance Agreement." *See* Recitals of the Transfer Agreement.

**ANSWER:**  The allegations in Paragraph 89 purport to quote, summarize, or derive from the parties' Transfer Agreement, which speaks for itself, and Charter denies any characterization of its contents that is inconsistent with its text.

90.     The Transfer Agreement further provides that Spectrum "acknowledges that TWC [Spectrum], as part of the resolution of disputes and releases reflected in the [three] 2015 Agreements, TWC [Spectrum] agreed that it would not take any offset against License fees for any services, or any facility it may be required to provide under the 2015 Agreements. TWC [Spectrum] continues to be bound by those promises, and Charter will cause TWC [Spectrum] to comply with the same. Neither company shall take any action (including but not limited to unilateral offsets) inconsistent with the same." *See* Section 2 of the Transfer Agreement.

**ANSWER:**  The allegations in Paragraph 90 purport to quote, summarize, or derive from the parties' Transfer Agreement, which speaks for itself, and Charter denies any characterization of its contents that is inconsistent with its text.

91.     As a condition of Yuma's approval of the transfer of control of the franchise agreement from Time Warner to CCH I, LLC, Yuma required CCH I, LLC to agree to comply with the IRU Agreement and the IRU Maintenance Agreement. *See* Paragraph 59 of Spectrum's Complaint.

**ANSWER:**  The allegations in Paragraph 91 assert legal conclusions to which no response is required.  To the extent a response is deemed required, the allegations in Paragraph 91 purport to quote, summarize, or derive from the parties' Transfer Agreement, which speaks for itself, and Charter denies any characterization of its contents that is inconsistent with its text.

**The Uniform Video Law**

92.     In 2018, the State of Arizona modified its video service license laws, and implemented a new Uniform Video Law, A.R.S. §§ 9-1401, *et seq.*

**ANSWER:**  The allegations in Paragraph 92 assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter admits the Uniform Franchise Law came into effect in 2018.  Except as specifically admitted, Charter denies the allegations in Paragraph 92 of the Amended Counterclaims.

93.     Yuma does not concede that Arizona's Uniform Video Law is valid when applied as Spectrum seeks to apply the statutes in this lawsuit, and continues to reserve all available defenses including but not limited to vested contract rights, property rights, and constitutional defenses with regard to the validity of the statute where the statute conflicts with federal and other state laws.

**ANSWER:**  The allegations in Paragraph 93 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter denies the allegations in Paragraph 93 of the Amended Counterclaims.

94.     The Uniform Video Law allows an incumbent cable provider to terminate an existing cable license agreement in favor of a uniform license and provides for the mandatory process for submitting an application and affidavit in order to obtain a uniform license. *See* A.R.S. § 9-1412.

1    **ANSWER:**  The allegations in Paragraph 94 assert legal conclusions to which no
2    response is required.  To the extent a response is deemed required, the allegations in
3    Paragraph 94 purport to quote, summarize, or derive from the Uniform Franchise Law,
4    which speaks for itself, and Charter denies any characterization of its contents that is
5    inconsistent with its text.

6        95.    The Uniform Video Law further provides for uniform enforcement of the Law
7    by requiring the Office of Administrative Hearings (the "OAH") to receive complaints
8    against a local government or a video service provider and comply with the duties imposed
9    on the OAH by the Uniform Video Law.

10   **ANSWER:**  The allegations in Paragraph 95 of the Amended Counterclaims assert
11   legal conclusions to which no response is required.  To the extent a response is deemed
12   required, Charter denies the allegations in Paragraph 95 of the Amended Counterclaims.
13   Answering further, the allegations in Paragraph 95 purport to quote, summarize, or derive
14   from the Uniform Franchise Law, which speaks for itself, and Charter denies any
15   characterization of its contents that is inconsistent with its text.

16       96.    The Uniform Video Law outlines the complaint process and the statute of
17   limitations. *See* A.R.S. § 9-1451.

18   **ANSWER:**  The allegations in Paragraph 96 of the Amended Counterclaims assert
19   legal conclusions to which no response is required.  To the extent a response is deemed
20   required, Charter denies the allegations in Paragraph 96 of the Amended Counterclaims.
21   Answering further, the allegations in Paragraph 96 purport to quote, summarize, or derive
22   from the Uniform Franchise Law, which speaks for itself, and Charter denies any
23   characterization of its contents that is inconsistent with its text.

24       97.    According to the legislative history of the Uniform Video Law, the legislature
25   intended the OAH to have exclusive jurisdiction over complaints under the law.

26   **ANSWER:**  The allegations in Paragraph 97 of the Amended Counterclaims assert
27   legal conclusions to which no response is required.  To the extent a response is deemed
28   required, Charter denies the allegations in Paragraph 97 of the Amended Counterclaims.

Answering further, this Court has already determined the OAH does not have exclusive jurisdiction over complaints under the Uniform Franchise Law, and that Charter was "entitled to file this suit without exhausting its administrative remedies." *See* Dkt. 68, Order, at 12.

98.    The House and Senate Fact Sheets regarding the Uniform Video Law specifically require "the OAH to receive complaints against a local government or a [video service provider] and comply with the duties imposed on the OAH by VS statutes" and "[d]esignates OAH as the adjudicative body for complaints and specifies proceeding time frames" and "[d]eems the OAH order as the final decision with respect to the complaint, subject to superior court appeal." *See* SB1140 House and Senate Fact Sheets, a true and correct copy of which are attached and incorporated as Exhibit "1."

**ANSWER:**  The allegations in Paragraph 98 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter denies the allegations in Paragraph 98 of the Amended Counterclaims. Answering further, the allegations in Paragraph 98 purport to quote, summarize, or derive from the documentary evidence and legislative materials, which speak for themselves, and Charter denies any characterization of their contents that is inconsistent with their text.  This Court has already determined the OAH does not have exclusive jurisdiction over complaints under the Uniform Franchise Law, and that Charter was "entitled to file this suit without exhausting its administrative remedies."  *See* Dkt. 68, Order, at 12.

99.    In anticipation of the implementation of the new Uniform Video Law, Spectrum mailed a three (3) sentence letter dated December 16, 2019, to Yuma informing Yuma that Spectrum sought to proceed under Arizona's new Uniform Video Law.

**ANSWER:**  Charter admits on December 16, 2019, it notified the City that it intended to terminate its local cable franchise in favor of a uniform video service license effective December 31, 2019.  Answering further, the allegations in Paragraph 99 purport to quote, summarize, or derive from the documentary evidence and legislative materials, which speak for themselves, and Charter denies any characterization of their contents that is inconsistent

with their text.  Except as specifically admitted, Charter denies the allegations in Paragraph 99 of the Amended Counterclaims.

100.    The letter was signed by Felipe Monroig, Sr. Director, Government Affairs, who, upon information and belief is not a principal executive officer or general partner of Spectrum.

**ANSWER:**  Charter admits its December 16, 2019, letter notifying the City it intended to terminate its local cable franchise in favor of a uniform video service license was signed by Felip Monroig, Senior Director, Government Affairs.  Answering further, the allegations in Paragraph 100 purport to summarize, quote, or derive from documentary evidence or electronic sources, which speak for themselves, and Charter denies any characterization of their contents that is inconsistent with their text.

101.    There is no provision under the Uniform Video Law for any letter notification.

**ANSWER:**  The allegations in Paragraph 101 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter denies the allegations in Paragraph 101 of the Amended Counterclaims.  Answering further, the allegations in Paragraph 101 purport to quote, summarize, or derive from the Uniform Franchise Law, which speaks for itself, and Charter denies any characterization of its contents that is inconsistent with its text.

102.    Spectrum's failure to comply with the provisions of the Uniform Video Law, include A.R.S. § 9-1451, which requires the complaint to be filed first with an administrative law judge, and provides for consideration by the courts (specifically, Arizona Superior Court) only after the administrative decision is final. As a result, Spectrum's lawsuit can seek only an advisory opinion from this Court as to Count I (which contains no alleged cause of action) and Count III (Count II on its face is legally deficient and does not provide for a recognizable federal law claim), a question exclusively of state law which (by statute) is first to be addressed by the administrative law judge, and only after final administrative action may be reviewed *de novo* by the courts.

1    **ANSWER:**  The allegations in Paragraph 102 of the Amended Counterclaims assert

2    legal conclusions to which no response is required.  To the extent a response is deemed

3    required, Charter denies the allegations in Paragraph 102 of the Amended Counterclaims.

4    This Court has already determined the OAH does not have exclusive jurisdiction over

5    complaints under the Uniform Franchise Law, and that Charter was "entitled to file this suit

6    without exhausting its administrative remedies."  *See* Dkt. 68, Order, at 12.

7        103.    Spectrum's December 2019 letter was not a notice under the statute.

8        **ANSWER:**  The allegations in Paragraph 103 of the Amended Counterclaims assert

9    legal conclusions to which no response is required.  To the extent a response is deemed

10   required, Charter denies the allegations in Paragraph 103.

11       104.    Yuma immediately responded, expressing confusion over the statements in

12   Spectrum's December 2019 letter and requested a dialog and discussion with Spectrum, as

13   required by the IRU Agreements.

14       **ANSWER:**  Charter admits the City responded to Charter's request for the

15   application and affidavit necessary to apply for a uniform video service license, which the

16   City refused to provide.  Answering further, the allegations in Paragraph 104 of the

17   Amended Counterclaims assert legal conclusions to which no response is required.  To the

18   extent a response is deemed required, Charter denies the allegations in Paragraph 104 of the

19   Amended Counterclaims.  Except as specifically admitted, Charter denies the allegations in

20   Paragraph 104 of the Amended Counterclaims.

21       105.    Spectrum never responded to the Yuma's [*sic*] December 2019

22   correspondence seeking a dialog and discussion with Spectrum.

23       **ANSWER:**  Charter denies the allegations in Paragraph 105 of the Amended

24   Counterclaims.

25       106.    Instead, Spectrum, without any notice filed this action alleging a breach of the

26   Uniform Video Law by Yuma when in fact Spectrum never took the required steps under

27   the statutes before a lawsuit may be filed.

28

1    **ANSWER:**  The allegations in Paragraph 106 of the Amended Counterclaims assert

2    legal conclusions to which no response is required.  To the extent a response is deemed

3    required, Charter denies the allegations in Paragraph 106 of the Amended Counterclaims.

4        107.    Under the Uniform Video Law, Spectrum was required to "file with the clerk

5    of the local government an application and affidavit that are signed by one of the principal

6    executive officers or general partners of the applicant." *See* A.R.S. § 9-1451.

7        **ANSWER:**  The allegations in Paragraph 107 of the Amended Counterclaims assert

8    legal conclusions to which no response is required.  To the extent a response is deemed

9    required, Charter denies the allegations in Paragraph 107 of the Amended Counterclaims.

10   Answering further, the allegations in Paragraph 107 purport to quote, summarize, or derive

11   from the Uniform Franchise Law, which speaks for itself, and Charter denies any

12   characterization of its contents that is inconsistent with its text.

13       108.    Under the Uniform Video Law, Yuma could not issue a Uniform License

14   without the required application and affidavit.

15       **ANSWER:**  The allegations in Paragraph 108 of the Amended Counterclaims assert

16   legal conclusions to which no response is required.  To the extent a response is deemed

17   required, Charter denies the allegations in Paragraph 108 of the Amended Counterclaims.

18   Answering further, the allegations in Paragraph 108 purport to quote, summarize, or derive

19   from the Uniform Franchise Law, which speaks for itself, and Charter denies any

20   characterization of its contents that is inconsistent with its text.

21       109.    Notwithstanding the fact that Spectrum filed this lawsuit on June 17, 2020,

22   alleging Yuma was in violation of the Uniform Video Law for failing to issue Spectrum a

23   Uniform License, Spectrum filed its application with Yuma for the Uniform Video Service

24   License on June 30, 2020.

25       **ANSWER:**  The allegations in Paragraph 109 of the Amended Counterclaims assert

26   legal conclusions to which no response is required.  To the extent a response is deemed

27   required, Charter denies the allegations in Paragraph 109 of the Amended Counterclaims.

28   Answering further, the allegations purport to summarize, quote, or derive from documentary

1  evidence or electronic sources, which speak for themselves, and Charter denies any
2  characterization of their contents that is inconsistent with their text.  Except as specifically
3  admitted, Charter denies the allegations in Paragraph 109 of the Amended Counterclaims.

4      110.   A true and correct copy of the Uniform Video Service License Application
5  and Affidavit is attached and incorporated as Exhibit "2."

6      **ANSWER:**   Charter admits the City's Exhibit 2 to the Amended Counterclaims
7  appears to be a copy of the application and affidavit that Charter submitted to the City.
8  Except as specifically admitted, Charter denies the allegations in Paragraph 110 of the
9  Amended Counterclaims.

10      111.   Under the Uniform Video Law, upon receipt of the Application, Yuma had
11  forty-five (45) days to issue a uniform license. In compliance with the Uniform Video Law,
12  Yuma issued the Uniform License to Spectrum on August 13, 2020. A true and correct copy
13  of the Uniform License is attached hereto as Exhibit "3" and incorporated herein.

14      **ANSWER:**   Charter admits the City's Exhibit 3 to the Amended Counterclaims
15  appears to be a copy of Charter's uniform video service license from the City, dated August
16  13, 2020.  The remaining allegations in Paragraph 111 of the Amended Counterclaims assert
17  legal conclusions to which no response is required.  To the extent a response is deemed
18  required, Charter denies the allegations in Paragraph 111.  Except as specifically admitted,
19  Charter denies the allegations in Paragraph 111 of the Amended Counterclaims.

20
21  

**COUNT ONE**
**(Breach of Contract)**

22      112.   Yuma re-alleges and incorporates by reference the allegations and statements
23  set forth in Paragraphs 1 through 111 of its Amended Counterclaim as if fully set forth
24  herein.

25      **ANSWER:**   Charter re-affirms and incorporates by reference its answers to
26  Paragraphs 1 through 111 of this Answer in response to Paragraph 112 of the Amended
27  Counterclaims.

28

113.    As detailed herein, Yuma and Spectrum entered into the IRU Agreement, the IRU Maintenance Agreement, the 2015 License and the Transfer Agreement (collectively the "2015 Agreements").

**ANSWER:**   Charter admits that the City and Charter are parties to the IRU Agreement, the IRU Maintenance Agreement, the City Franchise, and the Transfer Agreement with the City.  Except as specifically admitted, Charter denies the allegations in Paragraph 113 of the Amended Counterclaims.

114.    Spectrum is bound by the terms and conditions of the 2015 Agreements.

**ANSWER:**  The allegations in Paragraph 114 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter denies the allegations in Paragraph 114 of the Amended Counterclaims.

115.    By their terms, the IRU Agreement and IRU Maintenance Agreement are not elements of the 2015 License or subject to the Uniform Video Law, but are separate and distinct agreements for the construction and use of the City Fibers.

**ANSWER:**  The allegations in Paragraph 115 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter denies the allegations in Paragraph 115 of the Amended Counterclaims.

116.    The IRU Agreements are fully-integrated and separate contracts that may be amended only in writing.

**ANSWER:**  The allegations in Paragraph 116 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter denies the allegations in Paragraph 116 of the Amended Counterclaims.

117.    No such amendment to the IRU Agreements exists.

**ANSWER:**  The allegations in Paragraph 117 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter denies the allegations in Paragraph 117 of the Amended Counterclaims.

118.    The IRU Agreements grant Yuma property rights to, and undisturbed use of, the City Fibers.

**ANSWER:**  The allegations in Paragraph 118 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter denies the allegations in Paragraph 118 of the Amended Counterclaims.

119.   The 2015 License authorized Spectrum to construct and operate a cable system, whereas the IRU Agreement and IRU Maintenance Agreement provided for a separate, private government fiber network for Yuma's exclusive use.

**ANSWER:**  The allegations in Paragraph 119 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter denies the allegations in Paragraph 119 of the Amended Counterclaims.

120.   The construction and installation of the City Fibers installed under the IRU Agreement and IRU Maintenance Agreement were paid for by Yuma separate and apart from any of Spectrum's obligations under the 2015 License.

**ANSWER:**  The allegations in Paragraph 120 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter denies the allegations in Paragraph 120 of the Amended Counterclaims.

121.   Yuma has performed all of its obligations under the 2015 Agreements.

**ANSWER:**  The allegations in Paragraph 121 assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter denies the allegations in Paragraph 121 of the Amended Counterclaims.

122.   In breach of the various 2015 Agreements, Spectrum filed suit to invalidate the IRU Agreement and the IRU Maintenance Agreement and terminate Yuma's ability to use the City Fibers under the terms of those Agreements.

**ANSWER:**  The allegations in Paragraph 122 assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter denies the allegations in Paragraph 122 of the Amended Counterclaims.

123.   As stated herein, Spectrum never responded to Yuma's December 2019 correspondence seeking a dialog and discussion with Spectrum.

1    **ANSWER:**   Charter denies the allegations in Paragraph 123 of the Amended
2    Counterclaims.

3         124.   Spectrum has failed to act in good faith under the IRU Agreement and IRU
4    Maintenance Agreement and failed to fulfill its obligations thereunder.

5         **ANSWER:**  The allegations in Paragraph 124 assert legal conclusions to which no
6    response is required.   To the extent a response is deemed required, Charter denies the
7    allegations in Paragraph 124 of the Amended Counterclaims.

8         125.   Spectrum filed suit without any notice, discussion or negotiations with Yuma
9    and even filed suit prior to submitting its application for the Uniform Video Service License.

10        **ANSWER:**   Charter denies the allegations in Paragraph 125 of the Amended
11   Counterclaims.

12        126.   Yuma gave valuable consideration in return for the property rights it obtained
13   in the IRU Agreement; and has paid and continues to pay agreed amounts for the
14   construction work and maintenance performed under the IRU Maintenance Agreement.

15        **ANSWER:** The allegations in Paragraph 126 of the Amended Counterclaims assert
16   legal conclusions to which no response is required.   To the extent a response is deemed
17   required, Charter denies the allegations in Paragraph 126 of the Amended Counterclaims.

18        127.   The IRU Agreement granted Yuma "an indefeasible right of use ("IRU") to
19   use the City Fibers during the Term" of the Agreement, which Term does not expire until
20   January 31, 2035, and further provided Yuma with the "exclusive and irrevocable right to
21   use the [City Fibers] during the Term . . . [and that Spectrum] may take no action with respect
22   to the City Fibers that would prevent its continued use by [Yuma], or otherwise adversely
23   affect the rights of [Yuma] granted herein." *See* Section 1.1 of the IRU Agreement.

24        **ANSWER:**  The allegations in Paragraph 127 of the Amended Counterclaims assert
25   legal conclusions to which no response is required.   To the extent a response is deemed
26   required, the allegations in Paragraph 127 purport to quote, summarize, or derive from the
27   parties' IRU Agreement, which speaks for itself, and Charter denies any characterization of
28   its contents that is inconsistent with its text.

-37-

128.    Even if Arizona's new Uniform Video Law entitles Spectrum to void the IRU Agreements and IRU Maintenance Agreement, the IRU Agreement requires Spectrum to negotiate in good faith any modifications thereto in light of such regulatory changes. *See* Section 5 of the IRU Agreement.

**ANSWER:**  The allegations in Paragraph 128 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter denies the allegations in Paragraph 128 of the Amended Counterclaims. Answering further, the allegations in Paragraph 128 purport to quote, summarize, or derive from the parties' IRU Agreement, which speaks for itself, and Charter denies any characterization of its contents that is inconsistent with its text.

129.    Spectrum did not engage in any good faith discussions with Yuma prior to filing its Complaint and has thus breached its duties and obligations under the IRU Agreement.

**ANSWER:**  The allegations in Paragraph 129 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter denies the allegations in Paragraph 129 of the Amended Counterclaims.

130.    Spectrum, acting in bad faith, filed suit against Yuma alleging Yuma was violating the Uniform Video Law by failing to issue Spectrum a Uniform License, even though Spectrum had not submitted the statutorily required Application and Affidavit necessary for the issuance of a uniform license.

**ANSWER:**  The allegations in Paragraph 130 of the Amended Counterclaims assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter denies the allegations in Paragraph 130 of the Amended Counterclaims.

131.    Spectrum only submitted the required Application and Affidavit weeks after filing suit.

**ANSWER:**   Charter denies the allegations in Paragraph 131 of the Amended Counterclaims.

132.   Spectrum's actions in filing suit without notice and prior to submitting the required Application and Affidavit demonstrate Spectrum's bad faith and determination to void the IRU Agreements at all costs.

**ANSWER:**   Charter denies the allegations in Paragraph 132 of the Amended Counterclaims.

133.   In compliance with the Uniform Video Law, Yuma timely approved and issued the Uniform License, which has replaced the 2015 License.

**ANSWER:**  The allegations in Paragraph 133 of the Amended Counterclaims assert legal conclusions to which no response is required.  Charter admits a uniform license replaced its 2015 License with the City.  To the extent a response is deemed required, Charter denies the allegations in Paragraph 133 of the Amended Counterclaims.

134.   Under the IRU Maintenance Agreement, Spectrum agreed to not "take any action, or require the other party to take any action that causes it to be unable to satisfy the performance requirements of this Agreement." *See* Section 7(d) of the IRU Maintenance Agreement.

**ANSWER:**  The allegations in Paragraph 134 assert legal conclusions to which no response is required.  To the extent a response is deemed required, the allegations in Paragraph 134 purport to quote, summarize, or derive from the parties' IRU Maintenance Agreement, which speaks for itself, and Charter denies any characterization of its contents that is inconsistent with its text.

135.   Spectrum has breached the IRU Maintenance Agreement as Spectrum is seeking to void and terminate the performance of the IRU Agreements, which is an action to cause Yuma to be unable to obtain the continued benefits of the Agreements and a loss of Yuma's right to quiet enjoyment.

**ANSWER:**  The allegations in Paragraph 135 assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter denies the allegations in Paragraph 135 of the Amended Counterclaims.

136.    The IRU Maintenance Agreement further states that the Agreement shall be deemed a construction service, and not be deemed a service under the provisions of telecommunications services or a common carrier offering by Spectrum and that in the event the IRU Maintenance Agreement were deemed to constitute the provisions of such a telecommunications services or common carrier offering that Spectrum would cooperate in good faith to amend the Agreement so it would not constitute such a service or offering. *See* Section 7(e) of the IRU Maintenance Agreement.

**ANSWER:** The allegations in Paragraph 136 assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter denies the allegations in Paragraph 136 of the Amended Counterclaims.  Answering further, the allegations in Paragraph 136 purport to quote, summarize, or derive from the parties' IRU Maintenance Agreement, which speaks for itself, and Charter denies any characterization of its contents that is inconsistent with its text.

137.    Spectrum did not engage in any attempt to cooperate with Yuma prior to filing its Complaint and has thus breached its duties and obligations under the IRU Maintenance Agreement as Spectrum now seeks to have the IRU Maintenance Agreement deemed part of its License under the Uniform Video Law.

**ANSWER:**  The allegations in Paragraph 137 assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter denies the allegations in Paragraph 137 of the Amended Counterclaims.

138.    Under the Transfer Agreement, Spectrum agreed not to take any action inconsistent with the terms and conditions of the IRU Agreement and the IRU Maintenance Agreement.

**ANSWER:**  The allegations in Paragraph 138 assert legal conclusions to which no response is required.  To the extent a response is deemed required, Charter denies the allegations in Paragraph 138 of the Amended Counterclaims.  Answering further, the allegations in Paragraph 138 purport to quote, summarize, or derive from the parties' various

agreements, which speak for themselves, and Charter denies any characterization of their contents that are inconsistent with their text.

139. Spectrum has sought to invalidate all of the provisions of the IRU Agreements, which action is a violation of the Transfer Agreement.

**ANSWER:** The allegations in Paragraph 139 assert legal conclusions to which no response is required. To the extent a response is deemed required, Charter denies the allegations in Paragraph 139 of the Amended Counterclaims.

140. Spectrum has breached its duties and obligations under the Transfer Agreement as it has taken actions inconsistent with and in direct violation of the terms and conditions of the IRU Agreement and IRU Maintenance Agreement.

**ANSWER:** The allegations in Paragraph 140 assert legal conclusions to which no response is required. To the extent a response is deemed required, Charter denies the allegations in Paragraph 140 of the Amended Counterclaims.

141. Spectrum's actions have forced Yuma to seek alternative sources for its critical communications infrastructure, which alternatives which, upon information and belief, will cost Yuma in excess of $2 million dollars, damages for which Spectrum is liable.

**ANSWER:** The allegations in Paragraph 141 assert legal conclusions to which no response is required. To the extent a response is deemed required, Charter denies the allegations in Paragraph 141 of the Amended Counterclaims.

142. Upon information and belief, Spectrum breached the 2015 Agreements in other particulars, which are now unknown to Yuma, but for which Spectrum is liable to Yuma. As Yuma discovers these additional breaches, it will promptly disclose.

**ANSWER:** The allegations in Paragraph 142 assert legal conclusions to which no response is required. To the extent a response is deemed required, Charter denies the allegations in Paragraph 142 of the Amended Counterclaims.

143. As a direct and proximate result of Spectrum's multiple breaches of the various 2015 Agreements, Yuma has suffered and will suffer damages in an amount to be proven at trial, together with interest at the maximum legal rates allowed according to proof.

1   **ANSWER:**  The allegations in Paragraph 143 assert legal conclusions to which no
2   response is required.  To the extent a response is deemed required, Charter denies the
3   allegations in Paragraph 143 of the Amended Counterclaims.

4       144.   Yuma has retained the undersigned attorneys and will incur costs and fees in
5   pursuit of its rightful interests in this matter and is entitled to recover its reasonable
6   attorneys' fees pursuant to A.R.S. § 12-341.01 because this action constitutes a matter
7   arising out of a contract.

8       **ANSWER:**  The allegations in Paragraph 144 assert legal conclusions to which no
9   response is required.  To the extent a response is deemed required, Charter denies the
10  allegations in Paragraph 144 of the Amended Counterclaims.

11                                **COUNT TWO**
                  **(Breach of the Covenant of Good Faith and Fair Dealing**
12                  **and the Covenant of Quiet Enjoyment)**

13      145.   Yuma re-alleges and incorporates by reference the allegations and statements
14  set forth in Paragraphs 1 through 144 of its Amended Counterclaim as if fully set forth
15  herein.

16      **ANSWER:**  Charter denies the allegations in Paragraph 145 of the City's Amended
17  Counterclaims.  Count Two of the Counterclaims was dismissed.  To the extent a response
18  is required, Charter re-affirms and incorporates by reference its answers to Paragraphs 1
19  through 144 of this Answer in response to Paragraph 145 of the Amended Counterclaims.

20      146.   In every written contract, including the various 2015 Agreements herein at
21  issue, there is an implied covenant of good faith and fair dealing by each party.

22      **ANSWER:**  Charter denies the allegations in Paragraph 146 of the City's Amended
23  Counterclaims.  Count Two of the Amended Counterclaims was dismissed.

24      147.   The covenant of good faith and fair dealing imposes reciprocal duties on each
25  party to the contract to refrain from doing anything that would deprive the other party(s) of
26  the benefits of the contract.

27      **ANSWER:**  Charter denies the allegations in Paragraph 147 of the City's Amended
28  Counterclaims.  Count Two of the Amended Counterclaims was dismissed.

148.     There was an implied and stated covenant in the IRU Agreement and the IRU Maintenance Agreement that the parties would negotiate in good faith concerning any regulatory changes that might impact the Agreements.

**ANSWER:**  Charter denies the allegations in Paragraph 148 of the City's Amended Counterclaims.  Count Two of the Amended Counterclaims was dismissed.

149.     Spectrum's actions have frustrated Yuma's reasonable expectations under the IRU Agreements.

**ANSWER:**  Charter denies the allegations in Paragraph 149 of the City's Amended Counterclaims.  Count Two of the Amended Counterclaims was dismissed.

150.     Spectrum has acted in bad faith and in violation of the implied covenant of quiet enjoyment.

**ANSWER:**  Charter denies the allegations in Paragraph 150 of the City's Amended Counterclaims.  Count Two of the Amended Counterclaims was dismissed.

151.     Spectrum's failure or refusal to honor its contractual responsibilities was the result of a deliberate act, rather than an honest mistake, poor judgment or negligence.

**ANSWER:**  Charter denies the allegations in Paragraph 151 of the City's Amended Counterclaims.  Count Two of the Amended Counterclaims was dismissed.

152.     As a direct and proximate result of Spectrum's breaches of the covenant of good faith and fair dealing that exists in every contract, Yuma has suffered and will suffer damages in an amount to be proven at trial, together with interest at the maximum legal rates allowed according to proof.

**ANSWER:**  Charter denies the allegations in Paragraph 152 the City's Amended Counterclaims.  Count Two of the Amended Counterclaims was dismissed.

153.     Yuma has retained the undersigned attorneys and will incur other expenses in pursuit of its rightful interests in this matter and is, therefore, entitled to compensation of its attorneys' fees and costs.

**ANSWER:**  Charter denies the allegations in Paragraph 153 of the City's Amended Counterclaims.  Count Two of the Amended Counterclaims was dismissed.

## COUNT THREE
### (Unjust Enrichment)

154.     Yuma re-alleges and incorporates by reference the allegations and statements set forth in Paragraphs 1 through 154 of its Amended Counterclaim as if fully set forth herein.

**ANSWER:**  Charter denies the allegations in Paragraph 154 of the City's Amended Counterclaims.  Count Three of the Counterclaims was dismissed.  To the extent a response is required, Charter re-affirms and incorporates by reference its answers to Paragraphs 1 through 153 of this Answer in response to Paragraph 154 of the Amended Counterclaims.

155.     Unjust enrichment is an alternative to Yuma's breach of contract claims as a party is not prevented from asserting an equitable cause of action merely because the party also alleges an adequate legal remedy.

**ANSWER:**  Charter denies the allegations in Paragraph 155 of the City's Amended Counterclaims.  Count Three of the Amended Counterclaims was dismissed.

156.     The value of the City Fibers, the construction and installation of which was fully paid for by Yuma, including the release of claims associated therewith, has conferred enrichment upon Spectrum beyond that which the parties contemplated at the time.

**ANSWER:**  Charter denies the allegations in Paragraph 156 of the City's Amended Counterclaims.  Count Three of the Amended Counterclaims was dismissed.

157.     Spectrum has received the benefits of the City Fibers and the release of claims, at the expense of Yuma.

**ANSWER:**  Charter denies the allegations in Paragraph 157 of the City's Amended Counterclaims.  Count Three of the Amended Counterclaims was dismissed.

158.     There is no justification for Yuma to bear the cost of the construction, installation and maintenance of the City Fibers and associated value of the release of claims, to then have Spectrum terminate Yuma's use of those Fibers.

**ANSWER:**  Charter denies the allegations in Paragraph 158 of the City's Amended Counterclaims.  Count Three of the Amended Counterclaims was dismissed.

159.    Additionally, Spectrum seeks to charge Yuma substantially more for the use of the same City Fibers, depriving Yuma of the use of its property right, and forcing Yuma into some alternative "business arrangement" alleged in Spectrum's Complaint, causing additional enrichment to Spectrum and impoverishment to Yuma without any justification.

**ANSWER:**  Charter denies the allegations in Paragraph 159 of the City's Amended Counterclaims.  Count Three of the Amended Counterclaims was dismissed.

160.    As a direct and proximate result of Spectrum's unjust enrichment, Yuma has suffered and will suffer damages in an amount to be proven at trial, together with interest at the maximum legal rates allowed according to proof.

**ANSWER:**  Charter denies the allegations in Paragraph 160 of the City's Amended Counterclaims.  Count Three of the Amended Counterclaims was dismissed.

## REQUESTED RELIEF

A.    Charter denies the allegations of Paragraph A of the City's Requested Relief. Charter denies the City is entitled to any relief, including any damages.

B.    Charter denies the allegations of Paragraph B of the City's Requested Relief. Charter denies the City is entitled to any relief, including pre- or post-judgment interest.

C.    Charter denies the allegations of Paragraph C of the City's Requested Relief. Charter denies the City is entitled to any relief, including its attorneys' fees.

D.    Charter denies the allegations of Paragraph D of the City's Requested Relief. Charter denies the City is entitled to any relief, including its costs.

E.    Charter denies the allegations of Paragraph E of the City's Requested Relief. Charter denies the City is entitled to any relief.

## GENERAL DENIAL

Charter denies all allegations in the Amended Counterclaims that are not specifically admitted or denied above.

## **DENIAL OF HEADINGS**

Charter has restated in this Answer the headings as they appear in the Amended Counterclaims.  To the extent the headings purport to assert any factual allegations or legal conclusions, they are denied in their entirety.

## **CHARTER'S AFFIRMATIVE DEFENSES**

### **FIRST AFFIRMATIVE DEFENSE**

All actions of Charter in this matter were taken in good faith and for legitimate purposes.

### **SECOND AFFIRMATIVE DEFENSE**

The City's counterclaim is barred because Defendant brings its counterclaim with unclean hands.

### **THIRD AFFIRMATIVE DEFENSE**

The City's counterclaim is barred because the City has suffered no actual harm or damages.

### **FOURTH AFFIRMATIVE DEFENSE**

The City's counterclaim is barred by the doctrines of waiver, estoppel, and/or laches.

### **FIFTH AFFIRMATIVE DEFENSE**

The City's counterclaim is barred because any damages award would unjustly enrich the City.

### **SIXTH AFFIRMATIVE DEFENSE**

The City's counterclaim is barred by its failure to mitigate any purported damages it claims it may have or will suffer.

### **SEVENTH AFFIRMATIVE DEFENSE**

The City's counterclaim should be dismissed because it fails to state a claim upon which relief may be granted.

### **EIGHTH AFFIRMATIVE DEFENSE**

The City's counterclaim is barred because it is preempted by Arizona and federal law.

*                    *                    *

Charter reserves the right to amend this Answer and raise additional affirmative defenses should Charter discover facts that would enable it to raise such additional affirmative defenses.

## **PRAYER FOR RELIEF**

Charter prays for judgment as follows:

1.     For judgment in favor of Charter on Count One of the Amended Counterclaims against Defendant-Counterclaimant;

2.     For an award of attorneys' fees and costs; and

3.     Such other and further relief as this Court may deem just and proper.


RESPECTFULLY SUBMITTED this 23rd day of August, 2022.

QUARLES & BRADY LLP
Renaissance One
Two North Central Avenue
Phoenix, AZ  85004-2391

By */s/ Lauren E. Stine*
   C. Bradley Vynalek
   Lauren E. Stine

SHEPPARD MULLIN RICHTER &
HAMPTON LLP
2099 Pennsylvania Avenue, Suite 100
Washington, D.C. 20006-6801
202-747-1931
Paul Werner (admitted *pro hac vice*)
Imad Matini (admitted *pro hac vice*)

*Attorneys for Plaintiff Spectrum Pacific West LLC*

-47-

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that on the 23rd day of August, 2022, I electronically filed the

3  foregoing document with the Clerk's office using the CM/ECF System for filing and

4  transmittal of a Notice of Electronic Filing to all ECF registrants in the case, including

5  counsel of record:

6

7  BEST & KRIEGER, LLP
   Lisa Bell, Esq.

8  1800 K St., NW, Ste. 725
   Washington, DC 20006

9  lisa.bell@bbklaw.com

10
   YUMA CITY ATTORNEY'S OFFICE

11 Kenneth Scott McCoy, Esq.
   Rodney Christopher Short, Esq.

12 1 City Plz.
   Yuma, AZ 85366

13 scott.mccoy@yumaaz.gov

14 rodney.short@yumaaz.gov

15 *Attorneys for Defendant-Counterclaimant*

16

17                                      */s/ Debra L. Hitchens*

18

19

20

21

22

23

24

25

26

27

28

-1-